UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

AUG 1 1 2015

RECEIVED

# United States Court of Appeals
## For the
## District of Columbia Circuit

**IN RE ANITA K. WARREN,** *et al.*

*Petitioners*

## PETITION FOR A WRIT OF PROHIBITION

Matthew August LeFande
Attorney at Law PLLC
4585 North 25th Road
Arlington VA 22207
Tel: (202) 657-5800
Fax: (202)318-8019
email: matt@lefande.com
Attorney for the Petitioners
DC Bar #475995

STATEMENT REGARING CORPORATE PARTY

At the December 12, 2014 District Court hearing, the Plaintiff's counsel identified Steven Sushner as the President of District Title. Hr.'g Tr. at 2. The Petitioners have no further information regarding the ownership or officers of the Plaintiff. There are no other corporate parties to this appeal.


NOTICE OF RELATED CASE

This case involves the same parties and raises the same similar issues to the appeal of a preliminary injunction in *Warren v. District Title*, 14-7196, affirmed without explanation or argument.

**Table of contents**

I.    Table of Authorities.................................................................. ii

II.   Introduction .......................................................................... 1

III.  Statement of Facts ................................................................ 1

IV.   Summary of the Argument ..................................................... 4

V.    Argument .............................................................................. 4

      1.    Standard for a Writ of Prohibition ............................. 4

      2.    The District Court now acts with a lack of jurisdiction ............ 7


VI.   Conclusion ........................................................................... 18

Certificate of Compliance............................................................ 20

Certificate of Service ................................................................. 20

## I.    Table of Authorities

**Cases**

*Aetna Life Insurance Co. v. Haworth*,
    300 U.S. 227 (1937) ............................................................................. 9

*Allen v. Wright*,
    468 U.S. 737 (1984) ............................................................................. 9

*American Library Ass'n v. Barr*,
    956 F.2d 1178 (D.C. Cir. 1992) ..................................................... 14-15

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979) ....................................................................... 14-15

*Baur v. Veneman*,
    352 F.3d 625 (2d Cir. 2003) ............................................................... 10

*Blau v. Lamb*,
    314 F.2d 618 (2d Cir. 1963) ............................................................... 13

*First Chicago Int'l v. United Exchange Co.*,
    836 F.2d 1375 (D.C. Cir. 1988) ......................................................... 13

*Chihuahuan Grasslands Alliance v. Kempthorne*,
    545 F.3d 884 (10th Cir. 2008) ............................................................. 9

*Couveau v. Am. Airlines*,
    218 F.3d 1078 (9th Cir. 2000) ............................................................. 14

*Deakins v. Monaghan*,
    484 U.S. 193 (1988) ............................................................................. 9

*Eckerd Corp. v. J&S, Inc.*,
    647 F. Supp. 2d 388 (D.N.J. 2009) ..................................................... 11

Cases marked with an asterisk are those upon which we chiefly rely.

*Epps v. U.S. Capitol Police Bd.*,
   719 F. Supp. 2d 7 (D.D.C. 2010) .......................................................... 8

*First Chicago Int'l v. United Exchange Co.*,
   836 F.2d 1375 (D.C. Cir. 1988) .......................................................... 13

*Fleming v. Gutierrez*,
   785 F.3d 442 (10th Cir. 2015) ............................................................... 9

* *Franchise Tax Bd. v. Alcan Aluminum*,
   493 U.S. 331 (1990) ............................................................................. 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
   528 U.S. 167 (2000) ............................................................................. 17

*FTC v. Dean Foods Co.*,
   384 U.S. 597 (1966) ............................................................................... 5

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215 (1990) ............................................................................. 11

*Gladstone, Realtors v. Village of Bellwood*,
   441 U.S. 91 (1979) ............................................................................... 10

*Grace v. American Central Ins. Co.*,
   109 U.S. 278 (1883) ............................................................................. 11

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
   185 F. Supp. 2d 9 (D.D.C. 2001) .......................................................... 8

*GTE New Media Servs. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) .......................................................... 13

*Halcomb v. Office of the Senate Sergeant-at-Arms of the U.S. Senate*,
   209 F. Supp. 2d 175 (D.D.C. 2002) ...................................................... 8

*Hollingsworth v. Duff*,
   444 F. Supp. 2d 61 (D.D.C. 2006) ........................................................ 8

Cases marked with an asterisk are those upon which we chiefly rely.

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014) ............................................................ 6

*In re McCarthey*,
    368 F.3d 1266 (10th Cir. 2004) ........................................................... 7

*In re Sealed Case No. 98-3077*,
    151 F.3d 1059 (D.C. Cir. 1998) .......................................................... 7

\* *In re Tennant*,
    359 F.3d 523 (D.C. Cir. 2004) ......................................................... 4-5

*King Bridge Co. v. Otoe County*,
    120 U.S. 225 (1887) .......................................................................... 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................ 8

*Lemanik v. McKinley Allsopp, Inc.*,
    125 F.R.D. 602 (S.D.N.Y. 1989) ....................................................... 13

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990) ............................................................................ 9

\* *Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................... 8, 17

*Macharia v. United States*,
    334 F.3d 61 (D.C. Cir. 2003) .............................................................. 8

*Mansfield, C. & L. M. R. Co. v. Swan*,
    111 U.S. 379 (1884) ..................................................................... 4-5, 11

*McClellan v. Carland*,
    217 U.S. 268 (1910) ............................................................................ 5

*Muhammad v. FDIC*,
    751 F. Supp. 2d 114 (D.D.C. 2010) .................................................... 8

Cases marked with an asterisk are those upon which we chiefly rely.

*Napier v. Hawthorn Books, Inc.*,
    449 F. Supp. 576 (E.D. Mich. 1978) .................................................. 7-8

*Navegar, Inc. v. United States*,
    103 F.3d 994 (D.C. Cir. 1997) ...................................................... 14-16

*North Carolina v. Rice*,
    404 U.S. 244 (1971) ............................................................................ 9

*O'Donnell v. United States*,
    891 F.2d 1079 (3d Cir. 1989) ........................................................... 14

* *Ord v. District of Columbia*,
    587 F.3d 1136 (D.C. Cir. 2009) .................................................... 14-16

*Parker v. District of Columbia*,
    478 F.3d 370 (D.C. Cir. 2007) ...................................................... 14-16

*Preiser v. Newkirk*,
    422 U.S. 395 (1975) ............................................................................ 9

*Pulliam v. Allen*,
    466 U.S. 522 (1984) ............................................................................ 6

*Roche v. Evaporated Milk Ass'n*,
    319 U.S. 21 (1943) .............................................................................. 5

*Schmidt v. U.S. Capitol Police Bd.*,
    826 F. Supp. 2d 59 (D.D.C. 2011) .................................................. 7-8

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
    402 F.3d 1198 (Fed. Cir. 2005) ........................................................ 11

*Seegars v. Ashcroft*,
    396 F.3d 1248 (D.C. Cir. 2005) .................................................... 14-15

*Smith v. Whitney*,
    116 U.S. 167 (1886) ........................................................................ 5-6

Cases marked with an asterisk are those upon which we chiefly rely.

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................. 4-5

*Tuck v. Pan Am. Health Org.*,
    668 F.2d 547 (D.C. Cir. 1981) ............................................ 4

*United States v. Haldeman*,
    559 F.2d 31 (D.C. Cir. 1976) ............................................. 5

*United States v. Mayer*,
    235 U.S. 55 (1914) ........................................................... 5

*Vadino v. A. Valey Engineers*,
    903 F.2d 253 (3d Cir. 1990) ............................................. 14

*Valley Forge Christian College v. Americans United for Separation of
Church & State, Inc.*,
    454 U.S. 464 (1982) ....................................................... 9-10

*Warth v. Seldin*,
    422 U.S. 490 (1975) ......................................................... 11

*West Virginia v. EPA*,
    788 F.3d 330 (D.C. Cir. 2015) ......................................... 6-7

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ......................................................... 17

*Zurich Ins. Co. v. Logitrans, Inc.*,
    297 F.3d 528 (6th Cir. 2002) ........................................... 11

Cases marked with an asterisk are those upon which we chiefly rely.

**Statutes**

18 U.S.C. §§ 921-924 ................................................................... 15

28 U.S.C. § 1651 ......................................................................... 5

**Court Rules**

FED. R. APP. P. 32............................................................................. 20

FED. R. CIV. P 12............................................................................. 7-8, 18

FED. R. CIV. P. 17 ............................................................................ 12

FED. R. CIV. P. 59 ............................................................................ 3

**Treatises**

Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
        FEDERAL PRACTICE AND PROCEDURE (1984)................................. 14-15

James Wm. Moore *et al.*,
        MOORE'S FEDERAL PRACTICE (3d ed. 1999) ....................................... 14

1

## II.    Introduction

The District Court proceeds in a case where the purported Plaintiff title company lies plainly outside the "zone of injury" necessary to implicate its Article III jurisdiction. The real party in interest, the mortgage company, remains apparently disinterested in any claim against the Plaintiff or these Defendants, and instead indicates its intentions to seek relief in an *in rem* proceeding against the property itself. As the Plaintiff title company has no injury, and no such injury is threatened, the District Court acts without authority, exceeding the constitutional limitations of the federal judiciary.

## III.    Statement of Facts

Plaintiff District Title alleges that it unilaterally overpaid Petitioner Anita K. Warren in a real estate settlement transaction. The Plaintiff otherwise alleges such overpayment were funds due to Warren's mortgage company, Wells Fargo. *Warren v. District Title*, 14-7196, J.A. 18. The Plaintiff alleges no fraud or any affirmative act by any party led to such overpayment. The Plaintiff filed suit in the Superior Court case on September 2, 2014. J.A. 10.

2

Plaintiff District Title possesses no judgment, foreign or domestic, against any party to this lawsuit. The Plaintiff has represented that it has not paid the mortgage company for the funds purportedly due to it at closing. The Petitioners have subsequently learned that the mortgage company is initiating foreclosure proceedings on the same property for non-payment of the mortgage. District Title has presented no evidence that it would be contractually obligated to pay the mortgage company if the Petitioners did not.

After this case was removed to the District Court in diversity, the Petitioners moved to dismiss for lack of jurisdiction on December 4, 2014. ECF Docket # 10, 11. On December 15, 2014, the District Court granted the Plaintiff a preliminary injunction over the Petitioners' opposition. ECF Docket # 21. The Petitioners timely appealed and that remains pending before this Court. *Warren v. District Title*, 14-7196.

Nearly six months after moving to dismiss for lack of subject matter jurisdiction, the District Court denied the Petitioners' motions to dismiss. ECF Docket # 40. Three days later, and without a discovery scheduling conference or written order, the District Court ordered the parties to discovery. The Petitioners immediately moved for summary judgment on the standing issue and to stay such discovery. ECF Docket # 43, 44.

3

Despite the Petitioners' challenge to the District Court's authority to hear the case yet unanswered, the District Court denied the motion to stay, though acknowledging "[i]t is true that, if granted, defendants' motion would 'be thoroughly dispositive' of this case" and "constitutional standing is a necessary predicate to any exercise of federal jurisdiction." ECF Docket # 46 at 6. In response to the Petitioners' Motion for Summary Judgment, District Title acknowledged it had no obligation to pay Wells Fargo any money, instead claiming it had the "option" to pay Wells Fargo the money.

Given their challenges to the District Court's authority to proceed and the complete absence of developed argumentation to the contrary by either the District Court or District Title, the Petitioners refused to respond to District Title's discovery requests. On July 29, 2015, the District Court set a telephone conference on the pending discovery issue for the following afternoon. On the morning of July 30, 2015, the District Court denied the Petitioners' motion for summary judgment on standing. ECF Docket # 51. The District Court subsequently compelled the Petitioners to respond to District Title's discovery within seven days. ECF Docket # 53.

The Defendants moved for reconsideration, which the District Court, ignoring all of the authorities cited therein, misconstrued as a Rule 59(e) Motion for Reconsideration of a Final Judgment. ECF Docket # 56 at 2.

4

The District Court asserted there were no "extraordinary circumstances" warranting reversal of their Motion for Summary Judgment. *Id*. at 6.

## IV.    Summary of the Argument

Appellee District Title facilitated a real estate transaction involving Appellant Anita Warren and mortgagor company Wells Fargo Bank. Following District Title's claimed incorrect disbursement of settlement funds purportedly to the benefit of Warren and the detriment of Wells Fargo Bank, District Title sued Warren in District of Columbia Superior Court for funds it claimed remained due to Wells Fargo Bank. Where the claim amounted to funds due to Wells Fargo Bank and not District Title, District Title was without constitutional standing to sue either Warren or Day.

## V.    Argument

### 1. **Standard for a Writ of Prohibition.**

"Jurisdiction is, of necessity, the first issue for an Article III court." *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004) (quoting *Tuck v. Pan Am. Health Org.*, 668 F.2d 547, 549 (D.C. Cir. 1981)). "The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and

5

without exception.'" *In re Tennant*, 359 F.3d at 527 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382 (1884))).

"The petition seeking a writ of mandamus or prohibition to control a ruling of a District Judge is a relatively frequent occurrence in this circuit. Active defense of the ruling by counsel for the litigant favored is commonplace, and we have discerned no reason to discourage the practice." *United States v. Haldeman*, 559 F.2d 31, 138 (D.C. Cir. 1976) (footnote omitted). "The All Writs Act provides that the federal courts 'may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *In re Tennant*, 359 F.3d at 528 (quoting 28 U.S.C. § 1651(a)). "[I]n order to... prevent unauthorized action by the court below... the writ of prohibition [is] the appropriate remedy." *United States v. Mayer*, 235 U.S. 55, 71-72 (1914).

"[A]uthority under the All Writs Act 'extends to those cases which are within [a court's] appellate jurisdiction although no appeal has been perfected.'" *In re Tennant*, 359 F.3d at 528 (quoting *FTC v. Dean Foods Co.*, 384 U.S. 597, 603-04 (1966) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943)) and citing *McClellan v. Carland*, 217 U.S. 268, 280 (1910) ("Where a case is within the appellate jurisdiction of the higher court

6

a writ of mandamus may issue in aid of the appellate jurisdiction which

might otherwise be defeated by the unauthorized action of the court

below.").

> It is often said that the granting or refusing of a writ of prohibition is
> discretionary, and therefore not the subject of a writ of error. That
> may be true, where there is another legal remedy, by appeal or
> otherwise, or where the question of the jurisdiction of the court whose
> action is sought to be prohibited is doubtful, or depends on facts
> which are not made matter of record, or where a stranger, as he may in
> England, applies for the writ of prohibition.  But where that court has
> clearly no jurisdiction of the suit or prosecution instituted before it,
> and the defendant therein has objected to its jurisdiction at the outset,
> and has no other remedy, he is entitled to a writ of prohibition as
> matter of right; and a refusal to grant it, where all the proceedings
> appear of record, may be reviewed on error.

*Smith v. Whitney*, 116 U.S. 167, 173 (1886).

"[T]here is little support in the common law for a rule of judicial

immunity that prevents injunctive relief against a judge."  *Pulliam v. Allen*,

466 U.S. 522, 540 (1984)  "[J]udicial immunity is not a bar to prospective

injunctive relief against a judicial officer acting in her judicial capacity."  *Id.*

at 541-542.

> To obtain a writ, a petitioner must satisfy three conditions:

> (1) the mandamus petitioner must have no other adequate means
> to attain the relief he desires, (2) the mandamus petitioner must
> show that his right to the issuance of the writ is clear and
> indisputable, and (3) the court, in the exercise of its discretion,
> must be satisfied that the writ is appropriate under the
> circumstances.

7

*West Virginia v. EPA (In re Murray Energy Corp.)*, 788 F.3d 330 (D.C. Cir.

2015) HENDERSON, J. *concurring* (quoting *In re Kellogg Brown & Root,*

*Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014) (quotation marks omitted)

("Although the test is framed in terms of mandamus, it is equally applicable

to a writ of prohibition." (citing *In re Sealed Case No. 98-3077*, 151 F.3d

1059, 1063 n.4 (D.C. Cir. 1998) (per curiam) ("the grounds for issuing the

writs [of mandamus and prohibition] are virtually identical") and *In re*

*McCarthey*, 368 F.3d 1266, 1268 (10th Cir. 2004) ("The standards for

reviewing petitions for writs of prohibition are similar to the standards for

reviewing petitions for writs of mandamus.")).


## 2. The District Court now acts with a lack of jurisdiction.

If a court lacks subject matter jurisdiction to entertain a claim, it must

dismiss that claim, including demands for injunctive relief. See FED. R. CIV.

P. 12(b)(1), 12(h)(3). Where a defendant files a motion to dismiss under

both Rule 12(b)(1) and Rule 12(b)(6), "the court must first examine the Rule

12(b)(1) challenges" because a dismissal for lack of subject matter

jurisdiction renders "the [other] accompanying defenses and objections []

moot[.]" *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C.

2011) (citations and internal quotation marks omitted). "Before a court can

8

exercise jurisdiction... the party must be brought before the court -- in other words, the court must *acquire* jurisdiction." *Napier v. Hawthorn Books, Inc.*, 449 F. Supp. 576, 579 (E.D. Mich. 1978) (dismissing case already removed by Defendants from state court but claiming insufficient service of process).

A plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Halcomb v. Office of the Senate Sergeant-at-Arms of the U.S. Senate*, 209 F. Supp. 2d 175, 176 (D.D.C. 2002). Indeed, when it comes to Rule 12(b)(1), it is "'presumed that a cause lies outside [the federal courts'] limited jurisdiction,' unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction[.]" *Muhammad v. FDIC*, 751 F. Supp. 2d 114, 118 (D.D.C. 2010) (first alteration in original) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) and citing *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006)). "[T]he court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under . . . Rule 12(b)(6)." *Schmidt*, 826 F. Supp. 2d at 65 (citing *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003), *Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 12 (D.D.C. 2010),

9

and *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d

9, 13 (D.D.C. 2001)).

A lack of standing by the Plaintiff deprives the District Court of

jurisdiction under Article III's prohibition of advisory opinions. "[T]he

existence of a live case or controversy is a constitutional prerequisite to

federal court jurisdiction." *Fleming v. Gutierrez*, 785 F.3d 442, 444 (10th

Cir. 2015) (quoting *Chihuahuan Grasslands Alliance v. Kempthorne*, 545

F.3d 884, 891 (10th Cir. 2008)).

> Under Article III of the Constitution, federal courts may adjudicate
> only actual, ongoing cases or controversies. *Deakins v. Monaghan*,
> 484 U.S. 193, 199 (1988); *Preiser v. Newkirk*, 422 U.S. 395, 401
> (1975). To invoke the jurisdiction of a federal court, a litigant must
> have suffered, or be threatened with, an actual injury traceable to the
> defendant and likely to be redressed by a favorable judicial decision,
> *Allen v. Wright*, 468 U.S. 737, 750-751 (1984); *Valley Forge
> Christian College v. Americans United for Separation of Church &
> State, Inc.*, 454 U.S. 464, 471-473 (1982). Article III denies federal
> courts the power "to decide questions that cannot affect the rights of
> litigants in the case before them," *North Carolina v. Rice*, 404 U.S.
> 244, 246 (1971), and confines them to resolving "'real and substantial
> controvers[ies] admitting of specific relief through a decree of a
> conclusive character, as distinguished from an opinion advising what
> the law would be upon a hypothetical state of facts.'" *Ibid.* (quoting
> *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 241 (1937)).

*Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990).

This exchange between Petitioners' counsel and the Court at the

December 12, 2014 hearing was a curious one.

10

> THE COURT: Well, you don't dispute, no one disputes the $293,514.44 necessary to pay off the lender, Wells Fargo, was transferred to the defendant, Ms. Warren, by mistake.
>
> MR. LeFANDE: Well, that's a fantastic question. I think that's a wonderful question. I think that's the question that we -- that brings us to a question that says who's injured here? Who has the Article III standing here? Is it these folks or is it Wells Fargo? Because --
>
> THE COURT: Article III standing? We're here because you removed on grounds of diversity. We're done with Article III, unless you want to go back to Judge Dixon.

December 12, 2014 Hr'g Tr. at 51-52.

We weren't "done with Article III" by any means. Article III restricts federal courts to deciding "Cases" and "Controversies." To establish Article III standing, a plaintiff must allege, and ultimately prove, that he has suffered a cognizable injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief. *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003). Article III "requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant'". *Franchise Tax Bd. v. Alcan Aluminum*, 493 U.S. 331, 335 (1990) (quoting *Valley Forge Christian College,* 454 U.S. at 472 (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 (1979))). "[A] plaintiff must show that he *personally* has suffered an actual or threatened injury". *Franchise Tax Bd.*,

11

493 U.S. at 335 (emphasis in original). "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Contrary to the District Court's unexplained cursory dismissal of counsel's argument above, none of these constitutional requirements are abrogated by exercise of removal in diversity jurisdiction and this Court must continually consider if such requirements are present. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (quoting, *inter alia*, *Grace v. American Central Ins. Co*., 109 U.S. 278, 284 (1883); *Mansfield C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382 (1884); *King Bridge Co. v. Otoe County*, 120 U.S. 225, 226 (1887)).

As the District Court clearly points out, ***it was Wells Fargo Bank that was allegedly due the payoff for the mortgage at settlement***, not District Title. There has been no assignment of such debt and District Title is without standing to sue on behalf of Wells Fargo otherwise. See *Eckerd Corp. v. J&S, Inc.*, 647 F. Supp. 2d 388 (D.N.J. 2009). Absent the Appellee's standing to sue, *i.e.*, money due to District Title was not paid to District Title at settlement, this defect cannot be later cured and the case instead must be dismissed. See, *e.g., Schreiber Foods, Inc. v. Beatrice*

12

*Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005); *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531-32 (6th Cir. 2002).

The District Court proceeds now in the face of District Title's admission that no harm has yet come to it as a result of the transaction[1] and no claim has been made against it, the Petitioners' demonstration that District Title acts without the authority of the mortgage company, and the Petitioners' demonstration that the mortgage company is seeking remedies elsewhere having nothing to do with either District Title or the Petitioners.

> In a sworn affidavit, the president of District Title states that, because of defendants' refusal to return the funds, "District Title has been exposed to the Mortgage Lender for payment of the entire amount due to payoff the loan," and "District Title is also exposed to liability from the new owner of the Property and District Title's commercial lender for its outstanding line of credit."

July 30, 2015 Order Denying Def.s' Mot. Sum. J., ECF Docket #51 at 5.

Likewise, the District Court baldly recites Civil Rule 17 in a footnote, stating the rule "expressly contemplates that a party like plaintiff might be an appropriate plaintiff in a case like this one", ECF Docket # 51 at 6, but gives not the slightest explanation how or why, particularly given the complete absence of privity between District Title and the mortgage

---

[1]    In denying their Motion for Reconsideration, the District Court blatantly ignored that most fundamental element of a breach of contract action, a plaintiff's demonstration of damages proximately caused by the breach. ECF Docket # 56 at 4.

13

company. "The test in all such cases is whether plaintiff has 'such right as to afford [defendant] the protection of res judicata when the suit is terminated'" *Lemanik v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 607 (S.D.N.Y. 1989) (quoting *Blau v. Lamb*, 314 F.2d 618, 620 (2d Cir.), cert. denied, 375 U.S. 813 (1963)).   It is clear the District Court does not have an answer to this question.[2]

The District Court's determination "that plaintiff 'has suffered some actual *or threatened* injury as a result of the putatively illegal conduct of the defendant[s]'", *id.* (citations omitted), is purely conclusory and without further explanation.

> At best, GTE has provided only conclusory statements and intimations to buttress its assertion that it lost advertising revenues as a result of the defendants' actions. These are not enough. *Cf. First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988) ("Conclusory statements … '[do] not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction.' … The 'bare allegation' of conspiracy or agency is insufficient to establish personal jurisdiction." (citation omitted)). We will neither assume nor infer that the alleged conspiracy had *substantial effects* of the sort alleged by GTE, because to do so would be to assume or infer the answer to the very question that is before us.

---

[2]    In its most recent Order, the District Court appears to distance itself from the idea, claiming it only to be "dicta". ECF Docket # 56 at 3.  Yet, if this theory fails, and there are no injuries to the present Plaintiff, the case must be dismissed for lack of standing.

14

*GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir.

2000) (emphasis *sic*, parallel citation omitted).

> A summary judgment order that fails to disclose the district court's
> reasons runs contrary to the interest of judicial efficiency by
> compelling "the appellate court to scour the record in order to find
> evidence in support of [the] decision." 11 James Wm. Moore *et al.*,
> MOORE'S FEDERAL PRACTICE Par. 56.41[3][e], at 56-307 to 56-309 (3d
> ed. 1999). It also increases the danger that litigants, whether they win
> or lose, will perceive the judicial process to be arbitrary and
> capricious.

*Couveau v. Am. Airlines*, 218 F.3d 1078, 1081 (9th Cir. 2000).[3]

> As a preliminary matter, we are presented, once again, with the
> district court's grant of a motion for summary judgment without any
> explanation, however brief, of the reasons therefor. See, *e.g.*,
> *O'Donnell v. United States*, 891 F.2d 1079, 1081 (3d Cir. 1989).
> There are, of course, cases where the reason for summary judgment is
> apparent on the record because, for example, only one ground was
> given for the motion. However, in many cases, such as the one before
> us, various reasons were assigned by the movant as supporting
> summary judgment, and the district court's failure to explain its
> position leaves us without a reasoned basis on which to found our
> review.

*Vadino v. A. Valey Engineers*, 903 F.2d 253, 257-258 (3d Cir. 1990).

The most immediately evident error by the District Court herein is the

suggestion that any injury has been threatened. This situation is particularly

analogous to this Court's *Seegars/Navegar/Parker/Ord* line of cases for pre-

---

[3]     It is regrettable that this Court has done no better to explain itself
regarding these issues in the prior appeal.

15

enforcement standing. Those decisions dictate the opposite result held by

the District Court in this case.

> When the criminal statute that a litigant challenges has not yet been
> enforced against her, the challenger's claim may be justiciable if the
> challenger can demonstrate that she faces a threat of prosecution
> under the statute which is credible and immediate, and not merely
> abstract or speculative. In the proper circumstances, such threats of
> enforcement can simultaneously ripen a preenforcement challenge and
> give the threatened party standing.

*Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997) (citing

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298-99 (1979);

*American Library Ass'n v. Barr*, 956 F.2d 1178, 1196 (D.C. Cir. 1992); 13A

Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL

PRACTICE AND PROCEDURE § 3532.5 (1984)).

> In *Navegar*, we considered gun manufacturers' preenforcement
> challenges to provisions of the Violent Crime Control and Law
> Enforcement Act of 1994, which barred manufacturing and possessing
> semiautomatic assault weapons. 18 U.S.C. §§ 921-924 (1994).
> Certain provisions of the statute banned specific weapons by name.
> *Navegar*, 103 F.3d at 997. Observing that this specificity "show[ed]
> that the law place[d] a high priority" on prosecuting the companies
> that manufactured the named weapons, we found that those
> companies had standing to challenge the provisions of the statute that
> banned their products. *Id.* at 1000. By contrast, we found that no
> plaintiff had standing to challenge other parts of the statute
> prohibiting weapons not by name, but by general characteristics.
> Given that the statute described those weapons only in general terms,
> we concluded that their manufacturers had failed to show that the
> government placed a special priority on enforcing the law against
> them. *Id.* at 1001-02.

*Ord v. District of Columbia*, 587 F.3d 1136, 1141 (D.C. Cir. 2009).

> [I]n [*Seegars v. Ashcroft*, 396 F.3d 1248 (D.C. Cir. 2005)] we held that
> where plaintiffs alleged nothing more than that but for the District of
> Columbia's gun laws they would have obtained and registered pistols
> to keep and carry in their homes, they "ha[d] not shown a threat of
> prosecution reaching the level of imminence required by *Navegar*."
> *Id.* "[N]othing in the record," we explained, demonstrated that
> plaintiffs had been "personally threatened with prosecution" or that
> their prosecution had "any special priority for the government."
> *Id.* (internal quotation marks omitted). Similarly, in *Parker v. District
> of Columbia*, we felt "obliged to look for an allegation that appellants .
> . . ha[d] been singled out or uniquely targeted by the D.C. government
> for prosecution." [478 F.3d 370, 375 (D.C. Cir. 2007)]. We were
> unable to find such an allegation because, with one exception, the
> plaintiffs claimed only that (1) they wished to own prohibited firearms
> and (2) the District of Columbia had declared its intention to prosecute
> all violators.  We found those threats insufficient given that they
> expressed no "'special priority' for preventing these [plaintiffs] from
> violating the gun laws, or a particular interest in punishing them for
> having done so." *Id.*  Instead, the District of Columbia merely
> expressed "a sentiment ubiquitous among stable governments the
> world over, *to wit*, scofflaws will be punished." *Id.*

*Ord*, 587 F.3d at 1141.

*Ord* was disinquished from *Seegars* on the premise that the District of

Columbia had issued an arrest warrant against the plaintiff and had stated

that they might do so again in the future.  587 F.3d at 1142.  The present

case is starkly the opposite situation.  Not only has the mortgage company

expressed no interest in the present proceedings or either party, it has

appointed substitute trustees for the property the subject of the transaction,

an apparent predicate to seeking relief from other parties or the property

itself.  District Title herein can make no demonstration that, absent any

17

enforcement action by the real party in interest, its concern for "exposure" is

anything but speculative or conjectural. "Soon", as rejected by *Lujan*,

appears here to be "never".

> [I]f, as we suspect, 'soon' means nothing more than 'in this lifetime,'
> then the dissent has undertaken quite a departure from our precedents.
> Although "imminence" is concededly a somewhat elastic concept, it
> cannot be stretched beyond its purpose, which is to ensure that the
> alleged injury is not too speculative for Article III purposes -- that the
> injury is ""*certainly* impending"". It has been stretched beyond the
> breaking point when, as here, the plaintiff alleges only an injury at
> some indefinite future time, and the acts necessary to make the injury
> happen are at least partly within the plaintiff's own control.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (quoting *Whitmore*

*v. Arkansas*, 495 U.S. 149, 155 (1990) (emphasis added).

The District Court makes no effort whatsoever to explain or remedy

this deficiency in  District Title's standing beyond its bald assertions to the

contrary.  The Petitioners' right to an immediate dismissal is indisputable

under these circumstances.[4]

Particularly egregious in this regard is the District Court's overt

maneuvering of the timing of discovery to afford Plaintiff intrusive access to

---

[4]     Should the mortgage company someday make a claim against
District Title, District Title could of course, make a third party claim against
these Petitioners in that proceeding.  But the mortgage company has made
no indication that it ever intends to make a claim against the Plaintiff.
Standing must exist at the time of filing and cannot be remedied later.
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189
(2000) (standing "must exist at the commencement of the litigation").

18

the Petitioners' private affairs without the District Court ultimately having jurisdiction to proceed. This bell cannot be un-rung. The District Court has threatened the Petitioners with contempt proceedings for refusing to cooperate with discovery while motions to dismiss and for summary judgment were still pending. The District Court waited six months to decide the Petitioners' Rule 12(b)(6) motion and then issued a ruling denying their Motion for Summary Judgment the following month, on the same morning as the conference for the discovery non-compliance issues were to be heard. Upon giving notice to the District Court of the Petitioners' intention to file the present Petition, the District Court demanded production of discovery responses within seven days, again to undermine any effort to have the standing issue properly heard. The District Court's refusal to stay such proceedings has been premised upon equally unfounded and conclusory findings for the Plaintiff's standing. Such constitutionally deficient orders are irreparable in their injury and in no way can be remedied by later appellate proceedings.

**VI.    Conclusion**

For these reasons, and for such other reasons as the Court finds to be good and sufficient cause, this matter must be DISMISSED WITH

19

PREJUDICE for lack of standing and for failure to state a claim for which

relief can be granted.

Respectfully submitted, this eleventh day of August, 2015.

_____

Matthew August LeFande
Attorney at Law PLLC
4585 North 25th Road
Arlington VA 22207
Tel: (202) 657-5800
Fax: (202)318-8019
email: matt@lefande.com
Attorney for the Petitioners
DC Bar #475995

## Certificate of Compliance with Rule 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,388 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using OpenOffice Writer in Times New Roman 14 point font.

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing Motion to Stay was served via electronic filing upon the Appellee's counsel and mailed a copy to the Respondent, this eleventh day of August, 2015.

_____
Matthew August LeFande

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
                                   )
DISTRICT TITLE,                    )
                                   )
               Plaintiff,          )
                                   )
        v.                         )      Civil Action No. 14-1808 (ABJ)
                                   )
ANITA K. WARREN, et al.,           )
                                   )
               Defendants.         )
                                   )
```

### MEMORANDUM OPINION

Defendants Anita Warren and Timothy Day have moved for summary judgment, contending that plaintiff District Title lacks standing to pursue its claims in this case. Because plaintiff has the necessary standing, the motion will be denied.

The Court has set forth the full factual background of this case in numerous previous orders, and repeats only the relevant facts here. *See* Order (Dec. 15, 2014) [Dkt. # 21] (granting plaintiff's motion for preliminary injunction); Order (Jan. 9, 2015) [Dkt. # 29] (denying defendants' motion to stay preliminary injunction); Mem. Op. & Order (June 1, 2015) [Dkt. # 40] (denying defendants' motions to dismiss and defendant Warren's motion to compel arbitration and stay proceedings); Mem. Op. & Order (June 15, 2015) [Dkt. # 46] (denying defendants' motion to stay discovery).

Plaintiff is a real estate settlement company that, on July 11, 2014, handled the sale of a property formerly owned by defendant Warren. Am. Compl. [Dkt. # 5] ¶¶ 1, 14; Ex. 10 to Am. Compl. [Dkt. # 5] (contract between plaintiff and defendant Warren). At the time of the sale, plaintiff mistakenly wired $293,514.44 that was owed to Wells Fargo, the mortgage lender, to defendant Warren. Am. Compl. ¶ 15. Plaintiff alleges that defendant Warren's adult son,

defendant Day, assisted his mother with the settlement process and was present at the closing, Aff.

of Steven Sushner, Ex. B to Pl.'s Opp. to Defs.' Mot. for Summ. J. [Dkt. # 48] ("Sushner Aff.")

¶¶ 10, 12; Mot. for Prelim. Inj. Hr'g Tr., Dec. 12, 2014 ("Hr'g Tr.") at 17[1], and that immediately

afterwards, defendant Warren transferred some of these funds to defendant Day and others. *See,*

*e.g.*, Ex. 2 to Am. Compl. [Dkt. # 5] (cashier's check for $100,000 made out to defendant Day and

Anthony Silva[2]); Ex. 7 to Am. Compl. [Dkt. # 5] (cashier's check for $33,000 made out to

defendant Day). Plaintiff also alleges that defendants spent and have repeatedly refused to return

the funds, *see, e.g.*, Sushner Aff. ¶¶ 16–27, which defendants have yet to deny.

      Defendants moved for summary judgment on June 8, 2015, on the sole ground that plaintiff

does not have standing to pursue its claims. Mot. for Summ. J. [Dkt. # 43] ("Defs.' Mot.") at 1

("There is no material fact in dispute that the entirety of the money demanded by District Title

would be money due to non-party Wells Fargo."). Defendants' theory is that although it was

District Title that received and was supposed to disburse the funds at the settlement, it was District

Title that inadvertently wired funds to defendant Warren, and District Title is now seeking the

return of those funds based on its contract with Warren and other equitable grounds, District Title

did not itself suffer the economic harm that could give rise to Article III standing because the

---

[1]    At oral argument, defendants' counsel declined to contest plaintiff's assertion in an affidavit that Day was present at the closing and acknowledged that, as a result, that allegation would be accepted as evidence in this case. Hr'g Tr. at 17.

[2]    Plaintiff alleges that Silva is a relative of the defendants. Mem. of P. & A. in Supp. of Pl.'s Mot. for Prelim. Inj. [Dkt. # 6-1] at 4, ¶ 17. Plaintiff also alleges that the $100,000 check was deposited in an account owned by Silva and used to purchase real property in Maryland. *See* Ex. 3 to Am. Compl. [Dkt. # 5] (copy of wire transfer from Silva to the Brennan Title Company); Ex. 4 to Am. Compl. [Dkt. # 5] (deed of trust).

money was ultimately owed to Wells Fargo. *Id.*; Mem. of P. & A. in Supp. of Mot. for Summ. J. [Dkt. # 43] ("Defs.' Mem.") at 6–7.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

A plaintiff can establish that it has standing by showing that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). The

"injury in fact" element, which is at issue here, requires a party to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982), quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979); *see also Public Citizen v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007); *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 661 (D.C. Cir. 1996).

This is an action for breach of contract brought by a party to the contract against the counterparty. The existence of the contract between District Title and defendant Warren is undisputed. Indeed, defendant Warren herself sought to invoke the terms of the same contract in her motion to stay and to compel arbitration. *See* Def. Warren's Mot. to Compel Arbitration & Stay Proceedings [Dkt. # 14]. In addition, this case seeks remedies in tort against defendants Warren and Day for their alleged wrongful failure to return funds that do not belong to them. As the Court has indicated twice before, plaintiff has standing to pursue its claims here:

> There is no question that plaintiff has standing to pursue its claims in this case. First, plaintiff's breach of contract claim against defendant Warren plainly alleges that plaintiff has suffered an "injury in fact" – the breach of the contract – that is "traceable to" defendant Warren and redressable by the Court. And, second, defendants' ongoing refusal to return the $293,514.44 to plaintiff has placed plaintiff squarely in the path of "imminent" and "concrete and particularized" harm. All parties appear to agree that this amount is still owed to Wells Fargo, and the fact that Wells Fargo may not yet have sought to collect the funds from plaintiff does not change the fact that defendants' refusal to return the funds has exposed plaintiff to liability.

Mem. Op. & Order (Jan. 9, 2015) at 9 (citations omitted); Mem. Op. & Order (June 15, 2015) at 6–7.

Nothing in defendants' summary judgment briefing alters this analysis. Defendants argue that plaintiff has "show[n] no demand letter, indeed no correspondence at all, from any other party to the real estate closing, demonstrating it has any obligation whatsoever to pay anyone," Reply

Mem. in Supp. of Defs.' Mot. [Dkt. # 49] at 9, nor otherwise established its injury in this case. Defendants further point to evidence that purportedly establishes that "Wells Fargo intends to seek its own remedies and has neither requested nor authorized District Title to do its bidding in this regard." Defs.' Mem. at 8; *see also* Ex. A to Defs.' Mot. [Dkt. # 43-2] (Adjustable Rate Home Equity Conversion Second Deed of Trust); Ex. B to Defs.' Mot. [Dkt. # 43-3] (Appointment of Substitute Trustees).

But defendants' exhibits do not establish any fact that is material that would require the entry of judgment in their favor. They do not demonstrate what intentions, if any, non-party Wells Fargo has with respect to defendants, and whether, in fact, the money owed to the lender will be retrieved through other means.

Moreover, even if Wells Fargo is pursuing its own remedies, that would not change the fact that plaintiff, too, has been injured. In a sworn affidavit, the president of District Title states that, because of defendants' refusal to return the funds, "District Title has been exposed to the Mortgage Lender for payment of the entire amount due to payoff the loan," and "District Title is also exposed to liability from the new owner of the Property and District Title's commercial lender for its outstanding line of credit." Sushner Aff. ¶ 28. In other words, plaintiff's evidence – which defendants have not rebutted – shows that plaintiff "has suffered some actual *or threatened* injury as a result of the putatively illegal conduct of the defendant[s]." *See Valley Forge*, 454 U.S. at 472 (emphasis added) (citation omitted); *see also AT&T Corp. v. FCC*, 349 F.3d 692, 699 (D.C. Cir.

2003) (holding that the potential liability of the plaintiff created an injury for purposes of standing).[3]

For all of these reasons, defendants' Motion for Summary Judgment [Dkt. # 43] will be denied. A separate order will issue.

*Amy B Jack*

AMY BERMAN JACKSON
United States District Judge

DATE: June 30, 2015

---

3      Moreover, the Court notes that Federal Rule of Civil Procedure 17 expressly contemplates that a party like plaintiff might be an appropriate plaintiff in a case like this one:

> (a) Real Party in Interest.
>
> > (1) *Designation in General.* An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought:
> >
> > > (A) an executor;
> > >
> > > (B) an administrator;
> > >
> > > (C) a guardian;
> > >
> > > (D) a bailee;
> > >
> > > (E) a trustee of an express trust;
> > >
> > > (F) a party with whom or in whose name a contract has been made for another's benefit; and
> > >
> > > (G) a party authorized by statute.

Fed. R. Civ. P. 17.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
                                    )
DISTRICT TITLE,                     )
                                    )
              Plaintiff,            )
                                    )
       v.                           )    Civil Action No. 14-1808 (ABJ)
                                    )
ANITA K. WARREN, et al.,            )
                                    )
              Defendants.           )
                                    )
```

**ORDER**

Plaintiff District Title, a real estate settlement company, was handling the sale of a property formerly owned by defendant Anita Warren when it erroneously transferred $293,514.44 to Warren instead of to the mortgage lender, non-party Wells Fargo. Am. Compl. [Dkt. # 5] ¶ 15. Plaintiff alleges that defendant Warren and her adult son, defendant Timothy Day, made off with the funds, spent them, and now refuse to pay them back. Aff. of Steven Sushner, Ex. B to Pl.'s Opp. to Defs.' Mot. for Summ. J. [Dkt. # 48] ("Sushner Aff.") ¶¶ 16–27. Defendants have yet to deny these allegations.

On June 8, 2015, defendants filed a motion for summary judgment on the sole ground that plaintiff did not have Article III standing to pursue its claims because there was no "injury in fact." Mot. for Summ. J. [Dkt. # 43] at 1; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). Defendants' theory was that although it was District Title that received and was supposed to disburse the funds at the settlement, it was District Title that inadvertently wired the funds to defendant Warren, and District Title is now seeking the return of those funds based on its contract with Warren and other equitable grounds, District Title did not

itself suffer the economic harm that could give rise to Article III standing because the money was ultimately owed to Wells Fargo. *Id.*; Mem. of P. & A. in Supp. of Mot. for Summ. J. [Dkt. # 43] ("MSJ Mem.") at 6–7.

The Court denied defendants' motion for summary judgment on July 30, 2015. Order (July 30, 2015) [Dkt. # 50]; Mem. Op. (July 30, 2015) [Dkt. # 51]. The Court found that plaintiff had established the "injury in fact" element of standing based on the undisputed existence of a contract between plaintiff and defendant Warren – which plaintiff alleges was breached – and based on evidence that plaintiff faced a non-speculative risk of injury "as a result of the putatively illegal conduct of the defendant[s]." Mem. Op. (July 30, 2015) at 4–5, quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

On August 4, 2015, defendants filed a motion for reconsideration of the denial of their motion for summary judgment. Mot. for Recons. of Denial Summ. J. [Dkt. # 54] ("Mot. for Recons."); *see also* Mem. of P. & A. in Supp. of Mot. for Recons. [Dkt. # 54] ("Recons. Mem."). Although defendants' motion does not specify any rule of civil procedure or other authority, the Court construes it to be a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e).

"Motions to alter or amend a judgment under Rule 59(e) 'are not to be used to relitigate matters already argued and disposed of,'" *Hammond v. Kempthorne*, 448 F. Supp. 2d 114, 118 (D.D.C. 2006), quoting *Indep. Petroleum Ass'n of Am. v. Babbitt*, 178 F.R.D. 323, 324 (D.D.C. 1998), nor are they "a vehicle for presenting theories or arguments that could have been advanced earlier." *Swedish Am. Hosp. v. Sebelius*, 845 F. Supp. 2d 245, 250 (D.D.C. 2012), citing *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993). Rather, "they are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law." *Hammond*,

448 F. Supp. 2d at 118, quoting *Babbitt*, 178 F.R.D. at 324. "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004), quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Such motions "are disfavored and should be granted only under extraordinary circumstances." *Sieverding v. U.S. Dep't of Justice*, 910 F. Supp. 2d 149, 160 (D.D.C. 2012), quoting *N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau*, 618 F. Supp. 2d 75, 76 (D.D.C. 2009).

In the motion for reconsideration, defendants first assert that "[t]he Court's claim that District Title is a real party in interest under Rule 17(a) fails as a matter of law." Recons. Mem. at 3–6. But this objection rests on a misinterpretation of the Court's ruling. The Court did not find that plaintiff was a real party in interest in this case or that Rule 17 applied. Rather, the Court observed in dicta, in a footnote at the end of the opinion, that the Federal Rules of Civil Procedure contemplate situations in which a plaintiff can bring suit to recover funds that it is not ultimately owed. *See* Mem. Op. (July 30, 2015) at 6 n.3. So defendants' objection to this aspect of the ruling is unfounded.

Defendants' only other objection to the Court's denial of their motion for summary judgment is that the Court erred as a matter of law when it concluded that plaintiff had carried its burden to show that it "personally has suffered some actual *or threatened* injury as a result of the putatively illegal conduct of the defendant[s]." Recons. Mem. at 6–11; Mem. Op. (July 30, 2015) at 5, quoting *Valley Forge*, 454 U.S. at 472. Defendants assert that plaintiff has admitted "that no harm has yet come to it as a result of the transaction and no claim has been made against it," that plaintiff is "act[ing] without the authority of the mortgage company," and that defendants have

3

"demonstrate[ed] that the mortgage company is seeking remedies elsewhere having nothing to do with either District Title or the Defendants." Recons. Mem. at 7. According to defendants, "District Title can make no demonstration that . . . its concern for 'exposure' is anything but speculative or conjectural." *Id.* at 10. Furthermore, defendants attack the Court's conclusion on the standing issue as "purely conclusory and without further explanation," "unsupported by any evidence whatsoever," and "certainly contrary to District Title's own allegations." *Id.* at 8.

As a preliminary matter, defendants have not challenged the Court's finding that the undisputed existence of a contract between plaintiff and defendant Warren, coupled with plaintiff's allegation that Warren breached that contract, is sufficient to establish plaintiff's standing to bring suit here. *See* Mem. Op. (July 30, 2015) at 4.

Moreover, nothing in defendants' motion for reconsideration alters the Court's conclusion that plaintiff has asserted other injuries that are also sufficient to support standing in this case. When an alleged injury-in-fact is "threatened" and not yet realized, it must still be "actual or imminent, not conjectural or hypothetical." *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1294 (D.C. Cir. 2007), quoting *Lujan*, 504 U.S. at 560. "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is certainly impending." *Id.*, quoting *Lujan*, 504 U.S. at 565 n.2.

Plaintiff alleges that it is on the hook for the $293,514.44 that it mistakenly wired to defendant Warren, which the defendants allegedly spent and refuse to repay. The president of District Title avers in an affidavit that defendants' failure to return the funds has exposed plaintiff to liability to the mortgage lender, as well as to the new owner of the property and to plaintiff's own commercial lender. Sushner Aff. ¶ 28. This assertion not only comports with basic common

4

sense, but also satisfies plaintiff's burden at this pre-discovery stage of establishing an injury in fact that is neither speculative nor hypothetical, but rather concrete and imminent. *See Lujan*, 504 U.S. at 560.  Moreover, defendants' purported evidence to the contrary – a second deed of trust dated 2008, Ex. A to Defs.' Mot. for Summ. J. [Dkt. # 43-2], and a document that, according to defendants, shows that Wells Fargo appointed substitute trustees for the property Warren sold, *see* Ex. B to Defs.' Mot. for Summ. J. [Dkt. # 43-3] – does not conclusively undermine plaintiff's claims.  As the Court stated previously, these exhibits do not demonstrate what intentions, if any, non-party Wells Fargo has with respect to defendants – or plaintiff – and it remains to be seen whether the money owed to the lender will be retrieved through other means. *See* Mem. Op. (July 30, 2015) at 5; *see also* Recons. Mem. at 9–10 (reflecting defendants' own description of the appointment of substitute trustees as "an *apparent* predicate to seeking relief from other parties or the property itself") (emphasis added).

Finally, to the extent that defendants have identified any authority that bears on this question,[1] it supports the Court's conclusion that plaintiff has standing here.  First, the Court notes that large portions of defendants' motion for reconsideration are virtually identical to passages in the memorandum in support of their motion for summary judgment, which the Court has already considered. *Compare* Recons. Mem. at 6–7, 10–11, *with* MSJ Mem. at 3–6; *see also Hammond*, 448 F. Supp. 2d at 118 ("Motions to alter or amend a judgment under Rule 59(e) 'are not to be used to relitigate matters already argued and disposed of.'"), quoting *Babbitt*, 178 F.R.D. at 324.

---

[1]    The Court notes that, once again, defendants have conflated the entirely distinct doctrines of personal jurisdiction and subject-matter jurisdiction. *See* Recons. Mem. at 8, citing *GTE New Media Servs., Inc. v. Bellsouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000).  In the *GTE* case, the D.C. Circuit did not consider issues related to standing or subject-matter jurisdiction, but rather held that the district court "erred in concluding that there is sufficient evidence here to support personal jurisdiction" over the defendants, and remanded the matter for jurisdictional discovery. *Id.* at 1345.

In addition, defendants now cite a string of D.C. Circuit opinions addressing pre-enforcement challenges to federal criminal statutes – a situation that is, at best, only loosely analogous to the one faced by plaintiff here. *See* Recons. Mem. at 8–9, first citing *Navegar, Inc. v. United States*, 103 F.3d 994, 1000 (D.C. Cir. 1997) (holding that pre-enforcement challenge to criminal statute was proper where it was apparent that the statute would apply to specific appellants, and it was unlikely that the government would decline to enforce it); then citing *Am. Library Ass'n v. Barr*, 956 F.2d 1178, 1187 (D.C. Cir. 1992) (holding that plaintiffs bringing pre-enforcement challenge had claimed only a subjective injury and had "failed to demonstrate a 'credible threat' that the government [would] enforce the provisions against them"); and then citing *Ord v. District of Columbia*, 587 F.3d 1136, 1140–41 (D.C. Cir. 2009) (holding that "[w]here a plaintiff has yet to face prosecution under a statute he seeks to challenge," he must show that the threat of prosecution is "both credible and imminent" by demonstrating that he has been "'singled out or uniquely targeted by . . . the government for prosecution'"), quoting *Parker v. District of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007), *aff'd in part sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008). To the extent that these cases bear on a case that does not involve a potential threat of criminal prosecution by the government, the cited authority stands for the general proposition that a threatened injury that has not yet been realized may create standing where that injury is specific, credible, and imminent. The Court concludes once again that, on the current record, plaintiff has made that showing here.

For all of these reasons, the Court finds that defendants have not established the "extraordinary circumstances" that would warrant granting their motion for reconsideration. *See Sieverding*, 910 F. Supp. 2d at 160 (citation omitted). Therefore, it is **ORDERED** that defendants' Motion for Reconsideration of Denial [of] Summary Judgment [Dkt. # 54] is **DENIED**.

6

In addition, the Court observes that defendants advanced the same arguments about plaintiff's Article III standing before the D.C. Circuit in connection with their appeal of the preliminary injunction order in this case. *See* Br. of Appellant at 8–10, *District Title v. Warren*, No. 14-7196 (D.C. Cir. 2015); Reply Br. of Appellant at 2–7, *District Title v. Warren*, No. 14-7196 (D.C. Cir. 2015). Like this Court, the Court of Appeals bears the "independent obligation to assure [itself] of jurisdiction." *Mendoza v. Perez*, 754 F.3d 1002, 1018 (D.C. Cir. 2014), quoting *Floyd v. District of Columbia*, 129 F.3d 152, 155 (D.C. Cir. 1997). Although it did not expressly address the standing question, on August 4, 2015, the Court of Appeals issued an order which stated that this Court "correctly concluded a preliminary injunction was justified because appellee established it is likely to succeed on the merits of its claims and likely to suffer irreparable harm if the injunction were not granted." *District Title v. Warren*, No. 14-7196 at 1 (D.C. Cir. Aug. 4, 2015) (per curiam). There is no doubt that this case presents an actual case or controversy over which this Court may exercise jurisdiction.

AMY BERMAN JACKSON
United States District Judge

DATE: August 11, 2015

7